JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Darnell Williams, appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm appellant's conviction, vacate his sentence and remand for resentencing.
 {¶ 2} According to the case, appellant was indicted with one-count of compelling prostitution under R.C. 2907.21(A)(2), a felony of the third degree, on June 9, 2004. Specifically, appellant was charged with "knowingly did induce, procure, encourage, solicit, request, or otherwise facilitate [M.L.], DOB September 14, 1989, age 13, to engage in sexual activity for hire, whether or not the offender knows the age of the minor," which satisfied the compelling prostitution statute. His arraignment was scheduled for June 23, 2004, but he failed to appear and a capias was issued. On January 20, 2005, appellant was taken into custody, and on January 21, 2005, he entered a not guilty plea to the indictment. At that time, a $10,000 bond was ordered and appellant posted his bond.
 {¶ 3} There were several pretrials and several dates were continued for various reasons. The case came to trial on July 18, 2005. After a two-day jury trial, the jury returned a guilty verdict on the compelling prostitution charge. On August 1, 2005, the trial court held the sexual classification hearing, at which time appellant was classified as a sexually oriented offender. The trial court then sentenced appellant to serve five years in prison, the maximum sentence for a third-degree felony, and advised appellant of the imposition of post-release control. Appellant subsequently appealed to this court.
 {¶ 4} According to the facts, on August 4, 2003, M.L. was approached by a male on a playground. M.L. was at Thrush Park, a park in Cleveland which was about a block from where she lived with her family, baby-sitting for her five-year-old niece, Kimberly, and her one-year-old nephew, Mark. M.L. testified that appellant approached her and said, "$50 and I'll make it worth your while." M.L. walked away; appellant then repeated his request and followed her across the playground. M.L. then called her stepfather on her cell phone. While she was on the phone with her stepfather, she witnessed appellant get into his car and drive away. Her stepfather immediately got in his car and drove to the playground. He found M.L., and she pointed to the black car appellant got into. M.L.'s stepfather, N.P., followed appellant's car and got appellant to stop his car between West 103rd and West 104th streets.
 {¶ 5} N.P. pulled up to appellant's car and asked him why he was bothering his daughter. Appellant responded that he was not doing anything but drinking a beer in the park. N.P. told appellant that he was going to call the police. Appellant then said, "ha ha, you're not going to get my plate."[1]
Appellant then moved his car forward in such a manner as to block N.P.'s view of his license plate and drove across two tree lawns to get away. N.P. followed appellant across several tree lawns until the police told him to stop following appellant. The police eventually apprehended appellant and brought him back for a positive identification from M.L. and N.P.
 I. {¶ 6} Appellant's assignments of error states the following:
 {¶ 7} "The trial court erred in its denial of the defendant's motion for acquittal pursuant to Criminal Rule 29."
 {¶ 8} "The appellant's conviction was not supported by sufficient evidence."
 {¶ 9} "The appellant's conviction is against the manifest weight of the evidence."
 {¶ 10} "The defendant was denied effective assistance of counsel."
 {¶ 11} "The appellant's maximum prison sentence is in violation of R.C. 2953.08(A)(1)."
 II. {¶ 12} Because of the substantial interrelation between appellant's first three assignments of error, we shall address them together below. Appellant argues that the lower court erred in denying his motion for acquittal and that the conviction was not supported by sufficient evidence and is against the manifest weight of the evidence.
 {¶ 13} The test an appellate court must apply when reviewing a challenge based on a denial of a motion for acquittal is the same challenge based upon the sufficiency of the evidence to support a conviction. The standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence is as follows: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompson (1998), 127 Ohio App.3d 511.
 {¶ 14} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 15} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may, nevertheless, conclude that the judgment is against the weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jurors that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, their verdict shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id.
 {¶ 16} As to a claim that a judgment is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983),20 Ohio App.3d 172. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.State v. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 17} It is with the above standards in mind that we begin our analysis of the case at bar. The evidence in the record demonstrates that substantial direct testimony was provided at trial. Four witnesses testified at trial. M.L., N.P., Joseph Cavanagh and Margery Gerbec all testified at appellant's jury trial.
 {¶ 18} M.L. testified that she witnessed appellant sitting in his car watching her and the other two children for at least 20 minutes before he approached her. She further testified that appellant approached her and stated, "$50 and I'll make it worth your while."[2] M.L. also testified that appellant repeated it and followed her before running to his car and driving away.
 {¶ 19} N.P., M.L.'s stepfather, positively identified appellant approximately one hour after the incident. In addition, he testified that he wrote down the licence plate of the vehicle he followed and immediately gave that information to the police. N.P. further testified that appellant told him, "You ain't going to call the police."[3] He also testified that appellant tried to conceal his license plate by angling his car away from his view and then drove away, driving over yards and tree lawns to escape.[4]
 {¶ 20} Officer Joseph Cavanagh, an 11-year veteran of the Cleveland Police Department, testified that he ran the license plate number and then went to the automobile's registered address. Officer Cavanagh further testified that the female at the automobile's registered address called someone on a cell phone and told that person, the user of the vehicle, to return to her house. The appellant arrived in the car shortly thereafter. The police then put appellant in the back of a zone car and drove to an area nearby so that the victim and her stepfather could determine if he was the perpetrator.
 {¶ 21} Officer Cavanagh testified that he advised appellant that he was to be taken to a cold stand, an identification conducted within a reasonable amount of time, for possible identification. He testified that as soon as he advised appellant of the cold stand, he attempted to take off his distinctive gold-rimmed glasses and baseball cap, a key part of the description. The officer told him to put those things back on and proceeded with the identification. Officer Cavanagh further testified that both M.L. and N.P. positively identified appellant as the perpetrator they had dealt with that day.
 {¶ 22} Cleveland police detective Margery Gerbec interviewed the victim and her stepfather after the incident in question. Detective Gerbec testified at the trial that the victim looked much younger and more like a child at the time of the incident than she did on that day. She also testified that the victim looked less developed, shorter and more petite.
 {¶ 23} Based on the substantial evidence in the record, we find no error on the part of the lower court concerning appellant's motion for acquittal. Moreover, we find the evidence in the record to be legally sufficient to support the jury verdict as a matter of law. We find that there is substantial evidence upon which the court could reasonable conclude appellant knowingly induced, procured, encouraged, solicited, requested, or otherwise facilitated M.L., a 13-year-old girl, to engage in sexual activity for hire.
 {¶ 24} Accordingly, appellant's first three assignments of error are overruled.
 {¶ 25} Appellant argues in his fourth assignment of error that he was denied effective assistance of counsel. In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, the dual prongs of the test set forth inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, must be satisfied. A defendant must show not only that the attorney made errors so serious that he was not functioning as "counsel" as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive him of a fair and reliable trial. Id. at 687.
 {¶ 26} The Ohio Supreme Court set forth a similar two-part test:
"First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."
State v. Bradley (1989), 42 Ohio St.3d 136, 141-142.
 {¶ 27} Because there are countless ways to provide effective assistance in any given case, the scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, supra; accord State v. Bradley, supra. In sum, it must be proven that counsel's performance fell below an objective standard of reasonable representation, and that prejudice arose from his performance. Id.
 {¶ 28} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell
(1965), 2 Ohio St.2d 299.
"Judicial scrutiny of counsel's performance must be highly deferential * * *," and "* * * a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *."
Strickland, supra, at 689.
 {¶ 29} Appellant argues M.L.'s testimony that appellant's statement made her believe that he wanted her to have sex with him for $50 was irrelevant opinion evidence. M.L.'s opinion as to what appellant meant when he asked her "$50 and I'll make it worth your while" was admissible under both the Ohio Rules of Evidence and relevant case law on the issue of what constitutes proof of solicitation of sex from minors in importuning and compelling prostitution cases.
 {¶ 30} "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704. M.L.'s reaction to appellant's statement that he wanted her to have sex with her for $50 is relevant in this case under Evid.R. 701 and 704. The statement relates to money, sexual activity, and whether appellant knew what he was doing by saying it twice and then getting her reaction.
 {¶ 31} In State v. Cooper (1994), 92 Ohio App.3d 108, the court dealt with a charge of importuning where the defendant allegedly asked an 8-year-old victim to pull down his pants "so he could show him something." Id. at 109, 273-274. The court found that in terms of whether a solicitation was made to a person under 13, the court adopted the following standard: "Solicitation of a child under the age of thirteen requires no more than that a request be addressed to the child in a form reasonably calculated to cause the child to understand the nature of the request, and to afford the child an opportunity to respond." Id. at 109, 274.
 {¶ 32} Accordingly, M.L.'s opinion is valid and proper for the jury to consider. Moreover, we find that the evidence in the record fails to demonstrate ineffective assistance of counsel on the part of appellant's trial counsel. The conduct in this case did not constitute a substantial violation of any of defense counsel's essential duties to the client. Furthermore, we find that the record demonstrates that defendant was not prejudiced by counsel.
 {¶ 33} Appellant's fourth assignment of error is overruled.
 {¶ 34} Appellant argues in his final assignment of error that his maximum prison sentence violated R.C. 2953.08(A)(1)(b). R.C.2953.08(A)(1) provides the following:
"R.C. § 2953.08. Grounds for appeal by defendant or prosecutor of sentence for felony; appeal cost oversight committee
(A) In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds:
(1) The sentence consisted of or included the maximum prison term allowed for the offense by division (A) of section 2929.14
of the Revised Code, the sentence was not imposed pursuant to division (D)(3)(b) of section 2929.14 of the Revised Code, the maximum prison term was not required for the offense pursuant to Chapter 2925. or any other provision of the Revised Code, and the court imposed the sentence under one of the following circumstances:
(a) The sentence was imposed for only one offense.
(b) The sentence was imposed for two or more offenses arising out of a single incident, and the court imposed the maximum prison term for the offense of the highest degree."
 {¶ 35} We decline to address the issue of whether appellant's maximum sentence violates R.C. 2953.08(A)(1)(b) at this time. Instead, we acknowledge that State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, and State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, found the Ohio sentencing guidelines, as they pertain to the mandatory nature of judicial findings that must be made before a maximum or a consecutive sentence can be ordered, unconstitutional.
 {¶ 36} In State v. Foster, 2006-Ohio-856, at paragraph 103-104, the Ohio Supreme Court ordered that all cases with pending appeals relating to the judicial fact finding that used to be required under the sentencing guidelines must be remanded for resentencing according to statutes that are not unconstitutional. Specifically, the court stated: "These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion." Id.
 {¶ 37} According, appellant's fifth assignment of error is moot and this case is remanded for resentencing.
Conviction affirmed, sentence vacated and remanded for resentencing.
It is ordered that appellee and appellant share the costs of this proceeding.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, P.J., and Sweeney, J., concur.
[1] Tr. 187, 206.
[2] Tr. 142, 143, 170.
[3] Tr. 187.
[4] Tr. 187, 188.